FILED

MAY 1 6 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 23-40021-JPG |
| ) | |
| CORD A. WILLIAMS, ) | |
| CHRISTIAN L. PYLES, and ) | Title 18, United States Code, |
| MARK C. MAXWELL. ) | Sections: 242, 371, 1519. |
| ) | |
| Defendants. ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

At all times relevant to this indictment, unless otherwise stated:

### Background and Relevant Parties

1. Pinckneyville Correctional Center (PCC) is a medium-security state prison located in Pinckneyville, Perry County, within the Southern District of Illinois.

2. Each defendant was an employee of the Illinois Department of Corrections (IDOC) with custody and control over inmates serving sentences at PCC, within the meaning of 730 ILCS 5/3-1-2(d-5).

3. Defendants **CORD A. WILLIAMS** and **CHRISTIAN L. PYLES** were IDOC correctional officers working at PCC. Correctional officers work under the supervision of correctional sergeants and lieutenants to maintain order and perform needed security and custodial duties. Correctional officers maintain control over the movement and activities of inmates during their assigned shift. They ensure the safety and security of individuals in custody, while enforcing and maintaining disciplinary, sanitary, and custodial measures.

4. On April 24, 2022, Defendants **WILLIAMS** and **PYLES** were assigned to serve

as "movement officers." At PCC, this assignment is commonly referred to as being "on the walk," and, among other things, it means they worked outdoors and monitored inmates as they moved between buildings and housing units.

5. Correctional Officer E.S. was an IDOC correctional officer at PCC assigned to "the walk" with **WILLIAMS** and **PYLES**.

6. Defendant **MARK C. MAXWELL** was an IDOC acting lieutenant working at PCC. Correctional lieutenants supervise staff working in IDOC facilities, and serve a vital role to maintain custody, control, and safety within the institution. Correctional lieutenants supervise and counsel staff, inspect buildings and housing units, and generally manage issues and concerns of staff as well as individuals in custody to effectively operate the facility. They are responsible for maintaining the safety of inmates and the staff in their zone.

7. J.T. was an inmate serving a prison sentence. Inmate J.T. was outside walking from the prison cafeteria back to his housing unit when he got into a verbal dispute with other inmates who were inside a different housing unit. Correctional Officer E.S. intervened as the parties exchanged words. Correctional Officer E.S. attempted to handcuff J.T. after he continued to be animated despite receiving several verbal warnings. During the handcuffing procedure, J.T. spun his body around and punched Correctional Officer E.S. in the head with a closed fist knocking him to the ground.

8. Other correctional officers who were present immediately subdued Inmate J.T. A correctional officer working in the tower saw the commotion and immediately called a "Code 1" over the radio, which indicated that a staff member was in distress. Personnel from all over the prison rushed to the location.

9. Inmate J.T. was immediately subdued. Other officers soon arrived in the yard with

leg irons, and J.T.'s hands were cuffed behind his back and his legs were shackled. He was escorted from the prison yard to an evaluation room inside the prison's Health Care Unit where he was subjected to a retaliatory beating despite being fully restrained in handcuffs and leg irons.

10. Correctional officers are authorized to use force in good faith as a last resort or when other means are unavailable or inadequate, but only to the degree reasonably necessary to achieve a legitimate purpose. Officers may not use force to cause harm to punish, retaliate, or seek retribution against an inmate. Prison officials may not use unnecessary force against a prisoner who has already been subdued or who is incapacitated, and any use of force must be terminated once force is no longer necessary.

11. Correctional officers are required to write an incident report that completely and accurately documents any unusual incidents that they observe or that are reported to them, including disturbances or the use of force.

## COUNT 1
### Deprivation of Rights Under Color of Law - Unlawful Use of Force
### 18 U.S.C. § 242

On or about April 24, 2022, in Perry County, within the Southern District of Illinois,

**CORD A. WILLIAMS,** and
**CHRISTIAN L. PYLES,**

while acting under color of law, and while aiding and abetting one another, willfully deprived J.T. of the right, secured and protected by the Constitution and laws of the United States, to be free from cruel and unusual punishment. Specifically, the defendants punched and kicked Inmate J.T. about the head and body, resulting in bodily injury to J.T.

All in violation of Title 18, United States Code, sections 2 and 242.

## COUNT 2
### Deprivation of Rights Under Color of Law – Failure to Protect
### 18 U.S.C. § 242

On or about April 24, 2022, in Perry County, within the Southern District of Illinois,

**MARK C. MAXWELL,**

while acting under color of law, willfully deprived J.T. of the right, secured and protected by the Constitution and laws of the United States, to be free from cruel and unusual punishment. Specifically, the defendant, an acting correctional lieutenant, willfully failed to stop defendants CORD A. WILLIAMS and CHRISTIAN L. PYLES from punching and kicking J.T., as alleged in Count One, despite having the opportunity to do so. This offense resulted in bodily injury to J.T.

All in violation of Title 18, United States Code, section 242.

## COUNT 3
**Conspiracy to Obstruct Justice - Falsification of Record**
**18 U.S.C. § 371**

1. On or about April 24, 2022, continuing through January 1, 2023, in Perry County, and elsewhere within the Southern District of Illinois, defendants,

**CORD A. WILLIAMS, and**
**CHRISTIAN L. PYLES,**

knowingly and willfully combined, conspired, and agreed with one another and with other co-conspirators known and unknown to the grand jury, to obstruct justice, in violation of 18 U.S.C. § 1519, by knowingly falsifying and making a false entry in a record and document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within federal jurisdiction.

### Manner and Means of the Conspiracy

2. It was the plan and purpose of the conspiracy for the Defendants and their co-conspirators to cover up the unlawful beating of Inmate J.T., as charged in Counts One and Two of this Indictment, by preparing and filing reports documenting a false cover story about the incident that exaggerated the threat posed by the inmate while minimizing and omitting the true amount of force that was used against him.

### Overt Acts Committed in Furtherance of the Conspiracy

3. In furtherance of the conspiracy, and to accomplish its objectives, members of the conspiracy committed the following overt acts, among others:

   a. The conspirators discussed the content of their incident reports with one another. They had a mutual understanding that they should use the same or similar false cover story to explain what happened to Inmate J.T. after he arrived in the Evaluation Room in the Health Care Unit.

   b. Those completing incident reports falsely claimed that after J.T. was taken to the Evaluation Room that he continued to be combative, attempted to kick staff,

verbally threatened staff, and was physically secured on the floor to prevent further staff assault. The various narrative reports were prepared to make it appear that force was used in a good faith effort to gain compliance over an unruly inmate.

The reports were materially false because once he arrived at the Health Care Unit, J.T. was not combative, did not attempt to kick staff, did not make verbal threats, and was not secured on the floor to prevent staff assault. Force was not used in good faith to gain compliance over an unruly inmate.

c. Rather, as the conspirators then well knew, Inmate J.T. was handcuffed and shackled with leg irons and did not pose a physical threat to anyone. J.T. was beaten to retaliate against him for having previously punched another correctional officer. Those completing incident reports intentionally omitted the material fact that J.T. was subjected to this retaliatory beating in the Health Care Unit.

d. On April 24, 2022, **CORD A. WILLIAMS** knowingly signed and submitted an IDOC incident report documenting the false cover story.

e. On April 24, 2022, **CHRISTIAN L. PYLES** knowingly signed and submitted an IDOC incident report documenting the false cover story.

f. On April 24, 2022, INDIVIDUAL #1 knowingly signed and submitted an IDOC incident report documenting the false cover story.

g. On April 24, 2022, INDIVIDUAL #2 knowingly signed and submitted an IDOC incident report documenting the false cover story.

h. On April 24, 2022, INDIVIDUAL #3 knowingly signed and submitted an IDOC incident report documenting the false cover story.

i. Per IDOC policy, significant use of force incidents must be timely reported to IDOC headquarters in Springfield, Illinois. On Sunday, April 24, 2022, at 7:40 pm, INDIVIDUAL #4 sent a narrative email containing the substance of the false cover story to IDOC headquarters stating, "… [J.T.] remained combative attempting to kick at staff and threatening staff once in the healthcare unit. [J.T.] was secured on the floor to prevent any further assaults." This message to headquarters falsely represented the situation as a justified use of force.

j. To conceal the beating and the false incident reports, individuals known and unknown to the grand jury made false statements to Illinois State Police investigators to further the cover up.

All in violation of Title 18, United States Code, Section 371.

## COUNT 4
### Obstruction of Justice - Falsification of Record
### 18 U.S.C. § 1519

On or about April 24, 2022, in Perry County, within the Southern District of Illinois,

**CORD A. WILLIAMS,**

did knowingly falsify and make a false entry in a record and document, specifically his own IDOC Incident Report dated April 24, 2022, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Justice, an agency of the United States.

**WILLIAMS** wrote a narrative IDOC Incident Report to document the force used against J.T. That narrative report was false in that it said: (1) that J.T. was combative and non-compliant attempting to kick escorting officers; (2) that he secured J.T. on the floor in order to gain compliance; (3) that he used only a preventative level of force (e.g., "secured [J.T.] on the floor … to prevent further injury to staff"); (4) omitted that **WILLIAMS** and **PYLES** punched and kicked J.T. about the head and body during the incident; and (5) that J.T. was able to be evaluated in the Health Care Unit "once [he] responded to verbal commands and became compliant."

The narrative report was false because, as **WILLIAMS** then well knew: (1) J.T. was not combative and non-compliant attempting to kick escorting officers when he arrived in the Health Care Unit. Rather, the inmate was fully handcuffed, shackled, and being carried by four correctional officers. He was under the physical control of four correctional officers; (2) J.T. was not secured on the floor to prevent an imminent assault, rather, immediately after he was brought into the evaluation room, **WILLIAMS** and **PYLES** let go of his arms and simply dropped J.T. face-first onto the floor causing bodily harm; (3) **WILLIAMS** and **PYLES** did not use force to prevent an imminent assault, rather they used force causing bodily harm to retaliate against J.T.

for punching a correctional officer; (4) the report intentionally omitted the material fact that **WILLIAMS** and PYLES kicked and punched J.T. about the head and body; and (5) J.T.'s evaluation in the Health Care Unit was not delayed because he was noncompliant with verbal commands. Rather, J.T. could not be evaluated when he first arrived in the Health Care Unit because he was subjected to a retaliatory beating. He was able to be evaluated only after the beating ended.

    All in violation of Title 18, United States Code, Section 1519.

## COUNT 5
### Obstruction of Justice - Falsification of Record
### 18 U.S.C. § 1519

On or about April 24, 2022, in Perry County, within the Southern District of Illinois,

**CHRISTIAN L. PYLES,**

did knowingly falsify and make a false entry in a record and document, specifically his own IDOC Incident Report dated April 24, 2022, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Justice, an agency of the United States.

**PYLES** wrote a narrative IDOC Incident Report to document the force used against J.T. That narrative report was false in that: (1) it reported that upon arriving at the Health Care Unit, J.T. was combative and non-compliant and attempted to kick, implying that J.T. was the aggressor in the Health Care Unit; (2) it omitted that immediately after J.T. was brought into the evaluation room, WILLIAMS and **PYLES** let go of his arms and dropped J.T. face-first onto the floor causing bodily harm; and (3) it omitted that WILLIAMS and **PYLES** punched and kicked J.T. about the head and body during the incident.

The narrative report was false because, as **PYLES** then well knew that: (1) J.T. was not combative and non-compliant attempting to kick escorting officers when he arrived in the Health Care Unit. Rather, the inmate was fully handcuffed, shackled, and being carried by four correctional officers. He was under the physical control of four correctional officers; (2) **PYLES** intentionally omitted the material fact that immediately after J.T. was brought into the evaluation room, WILLIAMS and **PYLES** let go of his arms and dropped J.T. face-first onto the floor causing bodily harm; and (3) **PYLES** intentionally omitted the material fact that he and WILLIAMS punched and kicked J.T. about the head and body during the incident.

All in violation of Title 18, United States Code, Section 1519.

**A TRUE BILL**

███████████████████

**STEVEN D. WEINHOEFT**
Assistant United States Attorney

**RACHELLE AUD CROWE**
United States Attorney

Recommended Bond: Unsecured